**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

ROTHSCHILD BROADCAST
DISTRIBUTION SYSTEMS, LLC,

        Plaintiff,

    v.

PARADISO SOLUTIONS, LLC,

        Defendant.

0:21-cv-62204-CIV-DIMITROULEAS

JURY TRIAL DEMANDED

**DEFENDANT PARADISO SOLUTIONS'**
**MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

## <u>TABLE OF CONTENTS</u>

Page

I.    NATURE AND STAGE OF THE PROCEEDINGS ...................................................... 1

II.   SUMMARY OF THE ARGUMENT ............................................................. 1

III.  STATEMENT OF THE FACTS ............................................................... 2

IV.   LEGAL STANDARD .................................................................................. 4

    A.    Fed. R. Civ. P. 12(b)(6)..................................................................... 4

    B.    35 U.S.C. § 101 ................................................................................ 4

V.    ARGUMENT ............................................................................................. 6

    A.    *Alice* Step One: The '221 Patent Claims Are Directed to an Abstract Idea. ........ 6

        1.   Requesting, storing, and delivering media content is an abstract idea........... 6

        2.   The claims are untethered to a specific implementation. .............................. 9

        3.   The claims are not directed to a specific improvement in a computer's capabilities. .............................................................................. 11

    B.    *Alice* Step Two: The '221 Patent Claims Only Implement the Abstract Idea Using Generic Computer Technology, Add Nothing Inventive, and Are Therefore Patent-Ineligible. ................................................................. 12

        1.   The independent claims add nothing inventive. ........................................... 12

        2.   The dependent claims add nothing inventive. .............................................. 14

    C.    This case is ripe for disposition on the pleadings. ............................................. 15

VI.   CONCLUSION ........................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Tex., LLC v. Amazon.com, Inc.*,
   838 F.3d 1266 (Fed. Cir. 2016)...................................................................................11, 12

*Affinity Labs of Tex., LLC v. DirecTV, LLC*,
   838 F.3d 1253 (Fed. Cir. 2016)....................................................................1, 10, 11, 14

*Aldana v. Del Monte Fresh Produce, N.A., Inc.*,
   416 F.3d 1242 (11th Cir. 2005) ................................................................................4

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   134 S. Ct. 2347 (2014)...................................................................................... *passim*

*Appistry, Inc. v. Amazon.com, Inc.*,
   195 F. Supp. 3d 1176 (W.D. Wash., 2016) *aff'd sub nom. Appistry, LLC v. Amazon.com, Inc.*,
   676 F. App'x 1008 (Fed. Cir. 2017) .......................................................................15

*Apple, Inc. v. Ameranth, Inc.*,
   842 F.3d 1229 (Fed. Cir. 2016).........................................................................10, 11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).....................................................................................................4

*Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*,
   827 F.3d 1341 (Fed. Cir. 2016).................................................................................13

*buySAFE v. Google, Inc.*,
   765 F.3d 1350 (Fed. Cir. 2014).................................................................................13

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
   776 F.3d 1343 (Fed. Cir. 2014).............................................................................6, 7

*Cuvillier v. Sullivan*,
   503 F.3d 397 (5th Cir. 2007) ......................................................................................4

*DDR Holdings, LLC v. Hotels.com, L.P.*,
   773 F.3d 1245 (Fed. Cir. 2014).................................................................................13

*Dealertrack, Inc. v. Huber*,
   674 F.3d 1315 (Fed. Cir. 2012)...........................................................................10, 13

*Diamond v. Chakrabarty*,
   447 U.S. 303 (1980).....................................................................................................4

*Elec. Power Group, LLC v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016)................................................................10, 12

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016)................................................................11

*FairWarning IP, LLC v. Iatric Sys.*,
   839 F.3d 1089 (Fed. Cir. 2016)................................................................11

*Fort Props., Inc. v. Am. Master Lease LLC*,
   671 F.3d 1317 (Fed. Cir. 2012)................................................................5

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
   792 F.3d 1363 (Fed. Cir. 2015)................................................................13

*Intellectual Ventures I LLC v. Symantec Corp.*,
   838 F.3d 1307 (Fed. Cir. 2016)................................................................9, 11, 14

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   132 S. Ct. 1289 (2012)................................................................5

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
   837 F.3d 1299 (Fed. Cir. 2016)................................................................11

*O2 Micro Intl. Ltd. v. Beyond Innovation Tech. Co.*,
   521 F.3d 1351 (Fed. Cir. 2008)................................................................16

*Synopsys, Inc. v. Mentor Graphics Corp.*,
   839 F.3d 1138 (Fed. Cir. 2016)................................................................13

*In re TLI Commc'ns LLC Patent Litig.*,
   823 F.3d 607 (Fed. Cir. 2016)................................................................10, 11, 14

*Visual Memory LLC v. NVIDIA Corp.*,
   867 F.3d 1253 (Fed. Cir. 2017)................................................................11

**Statutes**

35 U.S.C. § 101................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)................................................................4, 6, 15

## I.      NATURE AND STAGE OF THE PROCEEDINGS

On October 25, 2021, Plaintiff Rothschild Broadcast Distribution Systems, LLC ("RBDS")
filed this patent infringement action against Defendant Paradiso Solutions, LLC for infringement
of U.S. Patent No. 8,856,221 (the "'221 Patent"). No *Markman* hearing or trial dates have been
calendared.

## II.     SUMMARY OF THE ARGUMENT

RBDS's Complaint (Dkt. No. 1) should be dismissed because the '221 Patent is patent-
ineligible under 35 U.S.C. § 101. The claims fail to meet § 101's threshold eligibility requirement
because (1) they are directed to the abstract idea of requesting, storing, and delivering media
content, and (2) they merely recite this abstract idea as a desired outcome without stating or placing
limitations on how to implement the idea, other than using generic functionality performed by
conventional computer components.

The Supreme Court has held that abstract ideas, including longstanding human activities,
are ineligible for patent protection under § 101. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct.
2347, 2354 (2014). That principle cannot be circumvented by limiting an idea to a technological
environment or implementing it using generic computer functionality. *Id.* at 2359-60. In recent
years, the Supreme Court, the Federal Circuit, and this Court have all routinely invalidated generic
computer-implemented patent claims under § 101. *See, e.g.*, *id.*; *Affinity Labs of Tex., LLC v.
DirecTV, LLC*, 838 F.3d 1253, 1255-56, 1265 (Fed. Cir. 2016).

The patent claims here suffer from the same basic defect as the claims in those cases
because they are directed not to any improvement in computer technology, but rather to routine
and common tasks long performed by humans, and use conventional computer components merely
as tools to perform these basic tasks. Accordingly, the claims are invalid under § 101, and RBDS's

Complaint should be dismissed.

## III.    STATEMENT OF THE FACTS

RBDS alleges that Paradiso infringes "one or more" claims of the '221 Patent, entitled "System and Method for Storing Broadcast Content in a Cloud-based Computing Environment." (Dkt. No. 1 at ¶ 23.) The patent purportedly discloses "a method and system for on-demand storage and delivery of media content." '221 Patent 1:26-27. The '221 Patent's two independent claims, claims 1 (to a "system") and 7 (to the corresponding "method"), claim substantially the same invention with only minor variations. Claim 1 is representative:

> 1.  A system for media content storage and delivery, the system comprising: a first server, the first server including:
>
>     a first receiver, the first receiver configured to receive a request message including media data indicating requested media content and a consumer device identifier corresponding to a consumer device; and
>
>     a first processor in communication with the first receiver, the first processor configured to determine whether the consumer device identifier corresponds to a registered consumer device;
>
>     if the first processor determines that the consumer device identifier corresponds to the registered consumer device, then: the first processor is further configured to determine whether the request message is one of a storage request message and a content request message;
>
>     if the request message is the storage request message, then the processor is further configured to determine whether the requested media content is available for storage; and
>
>     if the request message is the content request message, then the processor is further configure to initiate delivery of the requested media content to the consumer device;
>
>     wherein the media data includes time data that indicates a length of time to store the requested media content; and
>
>     the first processor is further configured to determine whether the requested media content exists; and
>
>     if the processor determines that the requested media content exists, the processor is further configured to determine whether the requested media content is available and whether there are restrictions associated with the requested media content that prevent the requested media content from being delivered to the consumer device.

The purported invention conceives of a system for alternatively storing or delivering requested media content in response to requests from consumer devices (*e.g.*, "wired or wireless

devices such as mobile phones, [PDA] devices, personal computers, laptop computers, tablet computers, digital video recorders, televisions, [DVD] players, among other devices that may communicate via network"). *Id.* 2:20-43, 3:56-60. The claimed "system" of claims 1 is comprised only of three generic components: a "server," a "receiver," and a "processor." *Id.* 2:24-25. The dependent claims do not add any other system components, other than a "memory" in claim 4. The system responds to two types of prompts: "storage request messages" and "content request messages." *Id.* 2:37, 6:34-35. If the server receives a "storage request message," it looks at the "media data" included in the message to determine how long to store the requested media content. *Id.* 5:23-36. The server may then download the requested media content. *Id.* 5:63-66. Alternatively, if the server receives a "content request message," the server searches a "media database" for the requested content. *Id.* 6:42-44. Once the content is located, the server may transmit it to the consumer device. *Id.* 7:1-2.

The '221 Patent admits that on-demand video and music services are prior art. *Id.* 1:33-36. The perceived problem with the existing systems related not to the means of transmitting or storing data, but rather to how a consumer's cost of use was not correlated with his or her quantity of media consumption. *Id.* 1:48-2:2. Instead of improving the technology of storing, transmitting, or processing media content, the '221 Patent purports to improve the economics of these systems by "tailor[ing the] cost to each consumer based on the requested media content and each consumer's needs." *Id.* 2:14-16. To achieve this alleged solution, the claimed invention requires nothing more than conventional components (e.g., "general purpose computer system," *id.* 10:17-18), standard communication equipment (e.g., a "transmitter" and "receiver," *id.* 2:25, 2:35), and generic hardware and software requirements (e.g. "The present invention can be realized in hardware, software, or a combination of hardware and software." *id.* 10:12-13). Of note, only two claims of

the '221 Patent (dependent claims 12 and 13), neither of which is mentioned in RBDS's Complaint, have *anything* to do with costs of use or other alleged economic benefits of the claimed "system" (claim 12 merely adds a step of "transmitting a financial cost of delivering the requested media content" and claim 13 denotes that the "financial cost is unaffected by the number of times the requested media content is delivered").

## IV.    LEGAL STANDARD

### A.    Fed. R. Civ. P. 12(b)(6).

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. Although factual allegations are taken as true, legal conclusions are given no deference—those matters are left for the court to decide. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (tenet that allegations are taken as true on a motion to dismiss "is inapplicable to legal conclusions"). Courts "must make reasonable inferences in Plaintiffs' favor, but [courts] are not required to draw Plaintiffs' inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief [as a matter of law], this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007) (internal citations and quotations omitted).

### B.    35 U.S.C. § 101

Section 101 of the Patent Act sets forth four categories of patentable subject matter: "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. Also, the law recognizes exceptions to patent eligibility, including "abstract ideas." *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980). Abstract ideas are ineligible for patent protection because a monopoly over these ideas would preempt their use in all fields. *See Bilski*, 561 U.S. at 611-12.

In other words, "abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Id.* at 653 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

Determining whether a patent claim is impermissibly directed to an abstract idea involves two steps. First, the court determines "whether the claims at issue are directed to a patent-ineligible concept." *Alice*, 134 S. Ct. at 2355. Second, if the claim contains an abstract idea, the court evaluates whether there is "an 'inventive concept'—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (internal quotations and citations omitted).

Transformation into a patent-eligible application requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Id.* at 2357 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012)). Indeed, if a claim could be performed in the human mind, or by a human using pen and paper, it is not patent-eligible. *CyberSource Corp. v. Retail* Decisions*, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011). Also, a claim is not meaningfully limited if it includes only token or insignificant pre- or post-solution activity—such as identifying a relevant audience, category of use, field of use, or technological environment. *Mayo*, 132 S. Ct. at 1297-98, 1300-01.

Finally, "simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Mayo*, 132 S. Ct. at 1300; *see also Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1323 (Fed. Cir. 2012) ("Such a broad and general limitation does not impose meaningful limits on the claim's scope.").

## V.    ARGUMENT

The claims of the '221 Patent are patent-ineligible because they: (1) are directed to the abstract idea of requesting, storing, and delivering media content; and (2) involve only conventional computer components and generic computer functions that do not, individually or in combination, make the claims patent-eligible. Because RBDS has failed to state a claim upon which relief may be granted, Paradiso respectfully requests that the Court grant its motion and dismiss this case with prejudice. Fed. R. Civ. P. 12(b)(6).

For § 101 purposes, all 13 claims of the '221 Patent can be evaluated collectively based on representative claim 1 because they are all "substantially similar and linked to the same abstract idea." *Alice*, 134 S. Ct. at 2359-60 (invalidating 208 claims across four patents based on two representative claims); *see also Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (invalidating 242 claims after analyzing only two "representative claims" where the other claims were "substantially similar in that they recite little more than the same abstract idea"). As discussed below, the '221 Patent claims are invalid even if considered separately and under any claim construction.

### A.    *Alice* Step One: The '221 Patent Claims Are Directed to an Abstract Idea.

#### 1.    Requesting, storing, and delivering media content is an abstract idea.

Stripped of its excessive verbiage, independent claims 1 and 7 recite the abstract idea of requesting, storing, and delivering media content as a series of basic steps: (1) a server receives a request message; (2) the server determines whether the request is to store content or deliver content; (3a) if the request is to store content, then the server determines whether the content is available and how long to store it; or (3b) if the request is to deliver content, then the server determines whether the content is available and whether there are restrictions on its delivery. '221 Patent claims 1, 7. The dependent claims add limitations that involve receiving a storage confirmation message (claims

6

2, 8), sending a registration prompt message (claims 3, 9), storing user data (claims 4, 10), verifying that the consumer device is associated with a user (claims 5, 11), using a second server to store content (claim 6), and transmitting the financial cost of delivering the requested content (claims 12, 13).

Both the specification and RBDS's Complaint confirm that the core of the claims—the essential, most important aspect—is the abstract idea of requesting, storing, and delivering media content. This process is an activity "humans have always performed," *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014)—a basic tool in the "storehouse of knowledge" that is "free to all . . . and reserved exclusively to none." *Bilski*, 561 U.S. at 602. People often arrange for requested content to be stored and delivered—for example, the humble coat check system requires an attendant to communicate with patrons and either store or retrieve their coats upon request. This basic human activity precedes the digital age, and its core functionality is not improved by simply performing the same routine on a computer.

That the authentication methods claimed by the '221 Patent require the use of computers and multiple steps does not make the claims any less abstract. Take for example requesting, storing, and delivering VHS tape content in the context of a 1980s public library. The table below illustrates this analogy by comparing claim 1 to an adapted version of claim 1 that substitutes the generic computer components with traditional human activity.

| Claim 1 | 1980s Library Rental of a VHS tape |
|---|---|
| 1. A system for media content storage and delivery, the system comprising: | A library system for media content storage and delivery, the library system comprising: |
| a first server, the first server including: | a library branch including: |
| a first receiver, the first receiver configured to receive a request | a librarian who receives a request for a VHS tape including rental duration information and a |

| | |
|---|---|
| message including media data indicating requested media content and a consumer device identifier corresponding to a consumer device; and | patron's library card corresponding to a patron; and |
| a first processor in communication with the first receiver, the first processor configured to determine whether the consumer device identifier corresponds to a registered consumer device; | a second librarian in communication with the first librarian, the second librarian who is able to determine whether the patron's library card corresponds to a registered patron of this library; |
| if the first processor determines that the consumer device identifier corresponds to the registered consumer device, then: the first processor is further configured to determine whether the request message is one of a storage request message and a content request message; | if the librarian determines that the library card corresponds to a registered patron of this library, then: the librarian determines whether the patron's request is a request for a VHS tape that is not currently physically present at the branch, or a request for a VHS tape that is currently available at the branch; |
| if the request message is the storage request message, then the processor is further configured to determine whether the requested media content is available for storage; and | if the patron's request is for a VHS tape that is not currently physically present at the branch, the librarian determines whether the VHS tape is available at another branch and could be transferred to the local branch to be picked up by the patron at a later date; |
| if the request message is the content request message, then the processor is further configure to initiate delivery of the requested media content to the consumer device; | if the patron's request is for a VHS tape that is currently available at the branch, then the librarian helps the patron find the VHS tape on the shelf and check it out; |
| wherein the media data includes time data that indicates a length of time to store the requested media content; and | wherein the patron informed the librarian how long he or she wanted to rent the VHS tape for, and could also ask to renew the material if needed for a longer period of time; |
| the first processor is further configured to determine whether the requested media content exists; and | the librarian further determines whether the VHS tape is actually on the shelf using the card catalog and his or her senses to verify that the correct materials have been catalogued; |
| if the processor determines that the requested media content exists, the | if the librarian determines that the correct VHS tape exists, he or she can determine |

| | |
|---|---|
| processor is further configured to determine whether the requested media content is available and whether there are restrictions associated with the requested media content that prevent the requested media content from being delivered to the consumer device. | whether the VHS tape is available to borrow (*e.g.*, has not already been reserved by another patron) and whether there are any restrictions associated with the requested VHS tape (*e.g.*, age-based restrictions such as an MPAA rating) that prevent the VHS tape from being delivered to the requesting patron. |

As this comparison illustrates, the method claimed by the '221 Patent is no different from an activity humans have long performed—requesting, storing, and delivering media content—except that the claimed method is automated using conventional, generic computer technology. *See Alice*, 134 S. Ct. at 2359 (finding routine activity long performed by humans and simply implemented on a computer does not confer patentability).

### 2.      The claims are untethered to a specific implementation.

The '221 Patent does not disclose any special or improved way of requesting, storing, and delivering media content, and no specific hardware configuration is required. To the contrary, it teaches that "[t]he present invention can be realized in hardware, software, or a combination of hardware and software" and that "[a]ny kind of computing system, or other apparatus adapted for carrying out the methods described herein, is suited to perform the functions described herein." '221 Patent 10:12-16.

The abstract concept of the '221 Patent "does not become nonabstract" merely because the claims involve the "technological environment" of conventional components. *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1319 (Fed. Cir. 2016) (citation omitted) ("*IV-Symantec*"); *see also Alice*, 134 S. Ct. at 2358. In *TLI*, the Federal Circuit observed that although the representative claim required "concrete, tangible components such as 'a telephone unit' and a 'server,' the specification [made] clear that the recited physical components merely provide a generic environment in which to carry out the abstract idea of classifying and storing digital [data]

9

in an organized manner." *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 614 (Fed. Cir. 2016).

Moreover, like other computer-implemented claims found to be patent-ineligible, the '221 Patent claims merely claim a desired result without explaining "how this would be technologically implemented"—the claims specify no "particular way of programming or designing the software." *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1241, 1244 (Fed. Cir. 2016). Instead, they contain broad functional language and only recite a desired goal of storing or delivering requested content in response to a request message. *See* '221 Patent cl. 1 (i.e., "receive a request message," "determine whether the request message is one of a storage request message and a content request message," "determine whether the requested media content is available for storage," and "initiate delivery of the requested media content"). Such "vague, functional" terms, "devoid of technical explanation as to how to implement the invention" in any non-conventional way, cannot confer eligibility. *TLI*, 823 F.3d at 615; *see also, e.g.*, *Elec. Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1356 (Fed. Cir. 2016); *Affinity Labs-DirecTV*, 838 F.3d at 1265; *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012).

The '221 Patent claims are materially indistinguishable from claims directed to network-based media sharing systems that deliver streaming content, which the Federal Circuit has repeatedly found to be directed to abstract ideas. For example, the claims in *Ultramercial* were directed to the abstract idea of transmitting "media products" from a "content provider" in response to a "request from the consumer." *Ultramercial*, 772 F.3d at 712. Similarly, in *Affinity Labs-Amazon*, the Federal Circuit held that claims directed to a "media managing system" that responds to a "collection of instructions" to "send a request for a streaming delivery of the content" were directed to the abstract idea of "delivering user-selected media content to portable devices." *Affinity*

10

*Labs of Tex., LLC v. Amazon.com, Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016). The '221 Patent's recitation of a "system for media content" that responds to a "request message" to "initiate delivery of the requested media content to the consumer device" likewise reveals its impermissible direction to an abstract idea. '221 Patent 10:44-67.

> ### 3.     The claims are not directed to a specific improvement in a computer's capabilities.

Three Federal Circuit cases finding claims patent-eligible at *Alice* step one are notably different from this case. *See Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016); *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299 (Fed. Cir. 2016); *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253 (Fed. Cir. 2017). In those cases, unlike here, the claims recited "specific . . . improvement[s] in computer capabilities." *Enfish*, 822 F.3d at 1336; *see also McRO*, 837 F.3d at 1313-14; *Visual Memory*, 867 F.3d at 1258 (finding that "claims focus on a 'specific asserted improvement in computer capabilities'—the use of programmable operational characteristics that are configurable based on the type of processor—instead of 'on a process that qualifies as an "abstract idea" for which computers are invoked merely as a tool'") (citation omitted).

Here, the '221 Patent "fails to provide any technical details for the tangible components" and "instead predominantly describes the system and methods in purely functional terms" using nothing more than conventional computer components ('221 Patent 10:12-16) and non-specified software routines (e.g., *id*. 3:51-55, 3:61-62, 4:6-10, 4:26-29, 4:48-51, 5:8-10, 5:20-23, 10:16-34). *TLI*, 823 F.3d at 612 (distinguishing *Enfish*); *see also FairWarning IP, LLC v. Iatric Sys.*, 839 F.3d 1089, 1094 (Fed. Cir. 2016) (distinguishing *McRO* and *Enfish*); *IV-Symantec*, 838 F.3d at 1313-14, 1315, 1321, n.5 (same); *Affinity Labs-DirecTV*, 838 F.3d at 1262 (same); *Ameranth*, 842 F.3d at 1241 (distinguishing *McRO*).

As discussed above, here the claimed steps and components "do no more than describe a desired function or outcome, without providing any limiting detail" to "confine[] the claim to a particular solution." *Affinity Labs-DirecTV*, 838 F.3d at 1269. The '221 Patent does not purport to claim any new computer capability, but rather relies on use of the well-known capabilities of computers, as discussed above. *See* '221 Patent 10:12-16. That is, the claims of the '221 Patent do not recite "an improvement in computers as tools," but instead "use computers as tools" to perform the abstract idea of requesting, storing, and delivering media content. *See Elec. Power*, 830 F.3d at 1354.

**B.**     *Alice* **Step Two: The '221 Patent Claims Only Implement the Abstract Idea Using Generic Computer Technology, Add Nothing Inventive, and Are Therefore Patent-Ineligible.**

The '221 Patent's claims also fail *Alice*'s second step because they add nothing inventive to the abstract idea of requesting, storing, and delivering media content. Each of the claims merely apply the concept in a particular technological environment using conventional computer components and functions. That is insufficient to make the claims patent eligible under § 101, even if they could pass muster under *Alice*'s first step.

      **1.**     **The independent claims add nothing inventive.**

Independent claim 1 recites performing an abstract idea using conventional computer functions: receiving request messages, verifying authorization, searching for requested content, and sending requested data. '221 Patent cl. 1. Such steps are "basic functions of a computer" and do not make the claims eligible. *See Alice*, 134 S. Ct. at 2359-60 (citation omitted). In addition, the use of "purely functional and generic" computer components is insufficient. *Id.* at 2360. The system of claim 1 is made up of only these generic components: a "server," a "receiver," and a "processor." '221 Patent cl. 1. Independent method claim 7 fares no better, as it likewise requires the method to be performed using only these generic components (a "consumer device," and a

12

"processor"). '221 Patent cl. 7.

Courts have repeatedly found such components and functions non-inventive. In *Alice*, for example, the Supreme Court held that claims reciting a "data processing system" with a "communications controller" for obtaining, modifying, and transmitting data was non-inventive. *Alice*, 134 S. Ct. at 2359-60. The Federal Circuit also has held similar basic computer functions and components to be insufficient to confer eligibility. *See, e.g., Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367-71 (Fed. Cir. 2015) (using an "interactive interface" and "break[ing] down and organiz[ing] . . . data according to some criteria" and monitoring data is non-inventive); *buySAFE v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (sending data over network is "'not even arguably inventive'"); *Dealertrack*, 674 F.3d at 1333 (finding "selectively forwarding" information and forwarding reply data is non-inventive). The same is true for the '221 Patent.

Even when these basic functions and components are viewed "as an ordered combination," they do not reveal a "non-conventional and non-generic arrangement of known, conventional pieces" that might provide an inventive concept. *Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016); *see also DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1259 (Fed. Cir. 2014) (explaining that the claims at issue involved a technological solution that overcame a specific challenge unique to the Internet). Unlike the handful of particular enhancements to computer technology (or application of the abstract idea to improve another technology or process) that the Federal Circuit has found eligible at *Alice* step two, the claims here merely apply an "old solution" (requesting, storing, and delivering media content) in a computer environment without specifying any non-conventional way to accomplish or practice the idea. *See Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151-52 (Fed.

Cir. 2016) (distinguishing *DDR* and *Bascom*); *IV-Symantec*, 838 F.3d at 1321 (same); *Affinity Labs-DirecTV*, 838 F.3d at 1261–62, 1265 (same).

The claims' arrangement of computer components and processes merely automate necessary steps to store and deliver requested content in response to a request message, which "cannot confer patent eligibility." *TLI*, 823 F.3d at 615. Thus, the independent claims add only insignificant limitations that do not render it patent eligible.

### 2.  The dependent claims add nothing inventive.

The additional limitations in the dependent claims do not confer patent-eligibility because they either recite token post-solution limitations or elements performed by computing elements that are "purely conventional," merely requiring "a generic computer to perform generic computer functions." *Alice*, 134 S. Ct. at 2359. Specifically:

- Claims 2 and 8 require the receiver to receive a storage confirmation message;

- Claims 3 and 9 provide for a registration prompt message to be sent if the consumer device is not registered;

- Claims 4 and 10 call for user data to be stored in memory;

- Claims 5 and 11 require the processor to verify that the consumer device identifier is associated with an end user;

- Claim 6 relates to the use of a second server to store content; and

- Claims 12 and 13 involve transmitting the financial cost of delivering the requested content.

These trivial limitations cannot confer patent eligibility. *See, e.g.*, *Bilski*, 561 U.S. at 612 ("[L]imiting an abstract idea to one field of use or adding token post-solution components d[oes] not make the concept patentable[.]"). For example, claim 6 simply adds a second server to the system of claim 1. This second server is described purely functionally ("store the requested media content," "receive a delivery message," "transmit the requested media content"), and thus suffers

from the same defects as claim 1. Other claims call for additional generic message processing

(claims 2, 3, 8, 9), or the storage and verification of user data (claims 4, 5, 10, 11). Finally, claims

12 and 13, which require the server to transmit the financial cost of delivering the media content,

are also irredeemably abstract because the communication of cost for providing a good or service

is a basic economic activity long performed by humans.

### C.   This case is ripe for disposition on the pleadings.

The issue of the patent eligibility is ready for the Court's consideration. This case is unlike

*Berkheimer* or *Cellspin*, where plaintiffs' non-conclusory factual allegations were sufficient to

establish at least a factual dispute as to whether the patents-at-issue claimed an inventive concept.

In *Berkheimer*, the Federal Circuit noted that the specification explicitly "describe[d] an inventive

feature that store[d] parsed data in a purportedly unconventional manner." 881 F.3d 1360, 1369

(Fed. Cir. 2018). In *Cellspin*, the amended complaint identified "several ways in which its

application of capturing, transferring, and publishing data was unconventional." 927 F.3d 1306,

1316 (Fed. Cir. 2019).

Here, there can be no factual dispute that the Asserted Patents do not claim unconventional

mechanisms of implementing the abstract idea. Plaintiff's bare and implausible allegations in the

Complaint cannot defeat this motion; otherwise Rule 12(b)(6) would be rendered toothless against

plaintiffs who plead "magic words." (*See* Dkt. No. 1 at ¶¶ 19–22.) Patentee plaintiffs should not

have the power to irrefutably **declare** that their claims are inventive. *See Appistry, Inc. v.

Amazon.com, Inc.*, 195 F. Supp. 3d 1176, 1183, n.6 (W.D. Wash., 2016) *aff'd sub nom. Appistry,

LLC v. Amazon.com, Inc.*, 676 F. App'x 1008 (Fed. Cir. 2017) ("Plaintiff's position is absurd.

Requiring the Court to accept such facts or legal conclusions (even in the form of an early expert

declaration) would permit any plaintiff to circumvent the § 101 inquiry on an early motion to

dismiss or motion for judgment on the pleadings simply by including a few lines attesting to the

novelty of the invention."). Instead of shielding the Asserted Patents from a § 101 challenge, these bald assertions instead betray that Plaintiff is keenly aware of the claims' vulnerability.

The § 101 issue can be resolved without claim construction because the non-technical steps to "receive a request message," "determine whether the consumer device identifier corresponds to a registered consumer device," "determine whether the request message is one of a storage request message and a content request message," "determine whether the requested media content is available for storage," "initiate delivery of the requested media content," "determine whether the requested media content exists," and "determine whether the requested media content is available and whether there are restrictions" can be well understood without construction. '221 Patent cl. 1; *see also O2 Micro Intl. Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360-63 (Fed. Cir. 2008) (emphasizing that claim construction is not an obligatory exercise in redundancy and is not required when terms have a well-understood meaning). The claimed steps are so generic (e.g., "receive," "determine") that no construction would provide meaningful limitations to transform the abstract nature of the claims into an eligible and inventive concept. *See Alice*, 134 S. Ct. at 2357. The issue of the patent eligibility is thus ripe for the Court's consideration.

## VI.    CONCLUSION

For the foregoing reasons, Paradiso respectfully requests that the Court dismiss RBDS's Complaint for failure to state a claim upon which relief can be granted. Because leave to amend would be futile, Paradiso respectfully requests dismissal with prejudice.

Dated:  March 23, 2022.

Respectfully submitted,

By:   */s/ Eleanor T. Barnett*
     Eleanor T. Barnett, Esq.
     Florida Bar No. 0355630

     ARMSTRONG TEASDALE LLP
     3250 Mary Street, Suite 102
     Coconut Grove, Florida 33133
     Tel: (305) 371-8809
     ebarnett@atllp.com
     miamiefiling@atllp.com

     **COUNSEL FOR DEFENDANT,**
     **PARADISO SOLUTIONS, LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on March 23, 2022, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

     */s/ Eleanor T. Barnett*
     Eleanor T. Barnett, Esq.

17